8/15/11   05cv934 Pittman

FILED

2011 AUG 16 P 3: 31

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN PITTMAN

v.

COMMISSIONER THERESA LANTZ

PRISONER
Case No. 3:05cv934 (AVC)

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, John Pittman, is an inmate confined at the Corrigan Correctional Institution in Uncasville, Connecticut. He brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 1987 conviction for murder. For the reasons set forth below, the petition is denied.

### FACTS

On April 27, 1987, a jury in the Connecticut Superior Court for the Judicial District of Hartford-New Britain at Hartford convicted petitioner of one count of Murder in violation of General Statutes § 53a-54a(a). On June 8, 1987, a judge sentenced the petitioner to total effective sentence of sixty years of imprisonment. See Pet. Writ Habeas Corpus at 2.

On appeal, the petitioner raised three grounds. He argued that: (1) the trial court erred in denying his motion to suppress tangible evidence; (2) the trial court erred in limiting his cross-examination of two of the state's witnesses; and (3) the trial court erred in permitting the prosecutor to elicit testimony of his post-arrest silence. See State v. Pittman, 209 Conn. 596, 598, 553 A.2d 155, 156 (1989). On January 17, 1989,

the Connecticut Supreme Court affirmed the judgement of conviction. Id. at 609, 553 A.2d at 161.

In June 1991, the petitioner filed a state habeas petition claiming trial counsel was ineffective in numerous ways. See Pittman v. Warden, No. CV910417041S, 1999 WL 669833 (Conn. Super. Ct. Aug. 16, 1999). On March 10, 1999, the petitioner filed an amended petition for writ of habeas corpus. On August 16, 1999, after holding an evidentiary hearing, the court denied the amended habeas petition. On November 13, 2001, the Connecticut Appellate Court dismissed the appeal. See Pittman v. Commissioner of Correction, 66 Conn. App. 831, 786 A.2d 451 (2001).

In October 1999, the petitioner filed a second state habeas petition claiming that counsel at trial and in the previous habeas petition were ineffective. On January 15, 2003, the petitioner filed an amended petition for writ of habeas corpus. On March 12, 2003, after holding an evidentiary hearing, the court denied the petition. See Pittman v. Warden, No. CV990432064, 2003 WL 1478080 (Conn. Super. Ct. March 12, 2003). On February 1, 2005, the Connecticut Appellate Court dismissed the appeal. See Pittman v. Commissioner of Correction, 87 Conn. App. 902, 864 A.2d 886 (2005). On March 23, 2005, the Connecticut Supreme Court denied review. See Pittman v. Commissioner of Correction, 273 Conn. 917, 871 A.2d 371 (2005).

The decision denying the petitioner's first state habeas petition sets forth a summary of evidence adduced at the petitioner's 1987 criminal trial. See Pittman v. Warden, No. CV910417041S, 1999 WL 669833, **1-4 (Conn. Super. Ct. Aug. 16, 1999). The petitioner relied on this summary of evidence on appeal of the denial of the habeas petition. The summary of evidence is states as follows:

> At the 1987 criminal trial, the state presented evidence that, shortly after 9:00 a.m. on the morning of October 13, 1985, the petitioner and his wife Gloria Pittman[1] left their residence in Gloria's car, a 1978 or 1979 green Chrysler LeBaron, for the purpose of transporting the petitioner to work. T. (3/25/87) at 25, 38-39, 141.[2] Prior to leaving, the petitioner returned to the house to get his butcher knives. Id. at 24. Gloria was expected back in a half hour to take her children to the laundromat. Id. at 25-27. She never returned. Id. at 40-41. At approximately 9:20 to 9:30 a.m., Gloria was seen in the front passenger seat of her car as the petitioner drove it on Holcomb Street [in] Hartford, [Connecticut]. T. (3/26/87) at 211-12, 216. Although scheduled to begin work at John Brown's Restaurant in Bloomfield at 9:00 a.m., the petitioner never arrived. Id. at 200-02. Around 2:30 p.m., he telephoned Michael Davis, a chef at the restaurant. He told Davis that his wife had a flat tire in Canton. T. (3/26/87) at 202.
>
> Later that afternoon, the petitioner came home, rushed to change his clothes, and took Gloria's children to the laundromat. T. (3/26/87) at 96-104.

---

[1] "To avoid confusion, hereinafter the victim will be referred to as Gloria." Id. at *1, n.1.

[2] "The 1987 trial transcripts were admitted at the habeas trial held on May 19, 1999. References to the transcripts from that trial will follow the format 'T. ( [date] ) at [page number].'" Id. at *1, n.2.

3

This was the first time in the children's memories that petitioner took them to the laundromat, as their mother generally did the wash. Id. at 38-39. Outside the laundromat the petitioner washed the inside of the car with bleach. Id. at 67-71, 131-32. The youngest child noticed that when petitioner wrung out the rags that he was using, the water was red and brown. Id. at 132. The older son thought it was odd that the petitioner was washing the car because it was raining, and the car had just been washed. Id. at 106.

The next morning, Monday, October 14, 1985, the petitioner arrived at the Oak Hill School where he worked four days a week. T. (3/30/87) at 482, 487. Gloria was also employed at the Oak Hill School. Id. at 480-81. Although she was scheduled to work from 7:00 a.m. to 3:00 p.m., Gloria didn't arrive. Id. at 483-86. Around 10:30 a.m., the petitioner approached Shannon Rhodes, the personnel director, and stated that he needed emergency leave. Id. at 487. He explained that Gloria was missing and that he needed to go home and take care of her children. Id. at 487. He was granted leave. Id. at 491. That evening, however, he worked his regular shift at Deacon's Loft Restaurant in Bloomfield. T. (3/31/87).

The following day, October 15, 1985, after an altercation with Gloria's family, the petitioner was transported to the Hartford police station. Thereafter, he was asked several "questions relating to his wife's possible whereabouts and what he thought may have happened to her." Pittman, 209 Conn. at 607, 553 A.2d 155. He either made no response to these questions or answered "no comment." Id.; T.(3/30/87) at 466-67. Also on October 15, 1985, Gloria's car was towed at the request of the police. T. (3/26/87) at 289. Pursuant to a search warrant, the car was searched. T. (3/30/87) at 521-22. Dr. Henry Lee testified that he found human blood in the front passenger area of the car. T. (3/31/87) at 631-33. Much of the blood was type B, Gloria's blood type. Id. at 639-40. Other blood was found on the vehicle's front seat that came from a person with type A blood or type AB blood. The petitioner introduced evidence that his blood is type O. T. (4/21/87) at 1146. Dr. Lee reconstructed the crime in the following way: The victim was struck with

4

medium force and was bleeding in the front seat. The
victim was then taken out of her car and put in the
trunk. Thereafter, the car was cleaned. T. (3/31/87) at
645.

On October 23, 1985, the petitioner called Shannon
Rhodes at the Oak Hill School and asked if he or his
sister could pick up his paycheck and Gloria's
paycheck. T. (3/30/87) at 514. Rhodes refused to
provide him with Gloria's check. Id. Later, Rhodes
asked the petitioner if he would cover Gloria's
children on his plan so that they could continue to
receive benefits. Id. at 515. The petitioner refused.
Id. On November 12, 1987, the petitioner telephoned two
different branches of Gloria's credit union about
withdrawing money from her account.[3] T. (3/31/87) at
601-04, 607-13. On one occasion, after he was told that
the bank required Gloria's approval, the petitioner
turned the phone over to a woman who represented that
she was Gloria Pittman. T. (3/31/87) at 601-04. On the
other occasion, he stated that "he would come right
down with a note from her to get money out of her
account." T. (3/31/87) at 609-10. Credit union
personnel called the police who waited outside the
Hartford office. T. (4/1/87) at 758-61. The petitioner
arrived, spotted the police, and fled. T. (4/1/87) at
758-67.

Gloria's skeleton was discovered in the Mill River
in New Haven, on April 5, 1986. T. (4/6/87) at 915-18.
It was identified by dental records as well as the
clothing which was still clinging to the bones and a
handbag that was found in the area of the remains. T.
(4/6/87) at 937, 939; T. (4/7/87) at 939-40. The
clothing and red shoes matched those that Gloria was
described as wearing when she left the house with the
petitioner. T. (3/25/87) at 17-19, 20; T. (4/6/87) at
930.

---

[3] "The petitioner telephoned Allene Fay Barrett at the V.A.
Federal Credit Union in Newington. T. (3/31/87) at 601-04. He
also called Charles E. Kibbe at the V.A. Federal Credit Union
located at 450 Main Street, Hartford. T. (3/31/87) at 608-10."
Id. at *3, n.3.

5

None of the victim's internal organs remained and only a small amount of soft tissue was left on the bones. T. (4/7/87) at 1002. The associate medical examiner, Dr. Arkady Katsnelson, explained that without flesh and organs, it is impossible to establish the track of the wounds. *Id.* The fourth left and right ribs of the victim's skeleton were transected. Id. at 1003-07. Katsnelson opined that the transections were made by a sharp instrument such as a knife. T. (4/7/87) at 1009; T. (4/8/87) at 1017-20. He listed stab wounds to the chest as the cause of death. T. (4/8/87) at 1020.

Dr. Henry Lee examined the jacket, sweater, and shirt and were consistent with a cutting or slashing. *Id.* at 1138. Based upon the placement and the types of holes found on the three garments, Lee opined that the victim received "cuts, stabbing, on her back center portion, the neck region, the left arm and the front right shoulder and front left shoulder and the middle portion of the rib cage area." T. (4/9/87) at 1134-35. Lee explained that when a body is found clothed, a probe can be used to determine the direction and the condition of the wounds and the cuts through the clothing and into the corpse. T. (4/9/97) at 1137. When the body and clothes are separate, and the clothes are intact, Lee can use a mannequin to reconstruct events but he will need the medical examiner's officer to provide the body's measurements. Id. When only the skeletal remains are available, such an examination is very difficult. Id. Apparently, Lee can trace the wounds through the layers of clothing but not into the corpse. Id.

An individual named Gregory Blue testified that on October 12, 14, or 15, 1985, the petitioner asked him about "a good place to dispose of the body." T. (4/6/87) at 880. The conversation went no farther because the petitioner would not pay Blue the amount of money that he wanted for such information. Id. at 880. The two men met again later in the day. At that time, the petitioner explained that he had obtained additional funds for the information. Id. at 882. Thereafter, Blue and an individual named Mitchell Henderson met with the petitioner. Id. at 883. The petitioner opened the trunk of a "greenish" Chrysler,

6

> possibly manufactured in the later 1970s, and Blue saw a body. Id. at 883-84. The men could not come to an agreement and the meeting ended. Id. at 885.
>
> Mitchell Henderson testified that he and Blue met with the petitioner who was inquiring about getting rid of a body. T. (4/6/87) at 903. Subsequently, the petitioner opened the trunk of a 1979 or 1980 green Chrysler. When he did so, Henderson also noticed a red shoe in the car's trunk. Id. at 905-06. Some time later, both the petitioner and Henderson were incarcerated at the same facility. Id. at 906. The petitioner told Henderson that he and the victim had "a dispute over some money" and that he "cut her" in the chest. Id. at 907.

Id. at **1- 4.

**STANDARD**

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the federal laws or the Constitution. See 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. See Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court may grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

7

>    the United States; or
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. Bell v. Cone, 535 U.S. 685, 694 (2002). "In either event, a state court ruling is 'contrary to' Supreme Court precedent only if it is 'diametrically different, opposite in character or nature, or mutually opposed' to the precedential holding." Lurie v. Wittner, 228 F.3d 113, 127 (2d Cir. 2000) (quotation marks omitted) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies

that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits). Because collateral review of a conviction applies a different standard that the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. See Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

## DISCUSSION

The petitioner challenges his state conviction on two grounds. He claims that : (1) his trial attorney afforded him ineffective assistance of counsel and (2) habeas counsel afforded him ineffective assistance of counsel.

## I. Trial Counsel

The petitioner argues that trial counsel was ineffective in

9

the following ways: (1) he did not impeach the testimony of two witnesses either via cross-examination or by raising certain inconsistencies in their testimony in his closing argument and (2) he failed to call his alibi witness to testify at trial.

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, petitioner must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him. Id. at 687-88. Counsel is presumed to be competent. Petitioner bears the burden of demonstrating unconstitutional representation. See United States v. Cronic, 466 U.S. 648, 658 (1984).

To satisfy the prejudice prong of the Strickland test, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial. Strickland, 466 U.S. at 694. The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. Rompilla v. Beard, 545 U.S. 374, 381 (2005). To prevail, petitioner must

demonstrate both deficient performance and sufficient prejudice. See Strickland, 466 U.S. at 700. If the court finds one prong of the standard lacking, it need not consider the remaining prong. See id. at 697, 700.

### A. Cross-Examination of Key Witnesses

The petitioner claims that his trial attorney failed to impeach two witnesses, Gregory Blue and Mitchell Henderson, by cross-examination or by pointing out the inconsistencies of their testimony in his closing argument. In the second state habeas petition, the petitioner asserted that trial counsel failed to adequately cross-examine his children as to the lack of a body in the trunk of his wife's car on the day his wife disappeared. In addition, the petitioner claimed that trial counsel failed to argue the inconsistencies between his children's testimony and the testimony of Gregory Blue and Mitchell Henderson regarding their observation of a body in the trunk of the petitioner's car at a later time. In deciding these claims, the Connecticut Superior Court applied the standard established in Strickland. Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).

In its decision denying the amended habeas petition, the court determined that trial counsel had elicited clear testimony

from the petitioner's children indicating that there was no body in the trunk of the petitioner's wife's car on the afternoon of the day she disappeared and that Mr. Henderson and Mr. Blue were lying about seeing a body in the trunk of the petitioner's wife's car at a later time that same day or during the following two days. Counsel successfully elicited testimony from both Mr. Henderson and Mr. Blue regarding their past convictions and pending criminal cases and established a motive for them to lie about observing a body in the trunk of the petitioner's wife's car. Counsel also called one of the petitioner's employers to testify that the petitioner was working during the time period, the evening of October 14, 1985, when the petitioner allegedly met Mr. Henderson and Mr. Blue inside the residence of Ms. Connie Stevens, made a statement about disposing of a body and then walked Mr. Blue and Mr. Henderson to his wife's car to permit them to observe the body contained within the trunk. In his closing argument, counsel pointed to facts and testimony that strongly suggested that it would have been impossible for either Mr. Henderson or Mr. Blue to have observed a body in the trunk of the petitioner's wife's car at any time from the initial day of her disappearance through the day the police seized the car. Thus, the court determined that trial counsel had successfully argued the contradictions in the state's case against the

petitioner.

Based on its review of trial counsel's cross-examination of the state's witnesses and comprehensive closing argument, the trial court concluded that the petitioner had not demonstrated that trial counsel's conduct was deficient. The state court's determination that the petitioner had not met the deficient performance prong of the *Strickland* standard was not an unreasonable application of Supreme Court law. The petition is, therefore, denied as to this claim of ineffective assistance of trial counsel.

**B.  Alibi Witness**

The petitioner contends that he notified trial counsel of a potential alibi witness before trial, but counsel failed to investigate or call this witness to testify at trial. The petitioner testified at the second habeas hearing that he had given his attorney the name of an alibi witness, Philip Watts, but counsel did not call him to testify at trial. Trial counsel testified that he did not recollect the petitioner having given him the name of an alibi witness prior to trial, but that he did recollect that the petitioner admitted to having murdered his wife. In analyzing this claim, the Connecticut Superior Court applied the standard established in <u>Strickland</u>. Because the state court applied the correct legal standard, the state court

13

decision is not contrary to federal law.

A defense attorney's "tactical decision of whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation." United States v. Schmidt, 105 F.3d 82, 90 (2d Cir.), cert. denied, 522 U.S. 846 (1997). The court should not second-guess counsel's choice of trial strategy with regard to witness presentation, even if it fails, particularly if the petitioner neglected to identify any specific testimony that would have helped his case if it had been presented at trial. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 958 (1987).

The habeas court observed that the petitioner had submitted no evidence to support his claim that he had informed counsel of the existence of an alibi witness prior to trial. In addition, there was no evidence that any sort of a plausible alibi could have been presented at trial through this witness or that the alibi would have covered the entire time period in question. The petitioner's trial counsel also testified that prior to trial, the petitioner had admitted that he had murdered his wife. Thus, the court concluded that the petitioner had neglected to demonstrate that he was prejudiced by counsel's alleged failure to call Philip Watts to testify at trial as an alibi witness.

14

See Munoz v. Keane, 777 F. Supp. 282, 288-89 (S.D.N.Y.1991) (holding that "[g]iven the overwhelming evidence that [the petitioner] participated in the drug transaction at issue, it was reasonable for defense counsel to conclude, as a strategic matter, that presenting testimony of the alleged alibi witnesses would be damaging to [petitioner's] case."), aff'd sub nom. Linares v. Senkowski, 964 F.2d 1295 (2d Cir.), cert. denied, 506 U.S. 986 (1992); Buitrago v. Scully, 705 F. Supp. 952, 954 (S.D.N.Y.1989) (holding counsel not ineffective for failing to present alibi witness where petitioner fails to show witness would provide alibi). The habeas judge also noted that the evidence suggested that the alibi witness had been present in Ms. Steven's residence when the petitioner stated that he needed to dispose of a body. Consequently, it would have been foolish to call the alibi witness to testify because he would have likely been subject to cross-examination as to the alleged statement by the petitioner about disposing of a body.

The state court's determination that the petitioner had not met the prejudice prong of the Strickland standard was not an unreasonably application of Supreme Court law. The petitioner has failed to demonstrate both deficient performance and sufficient prejudice. See Strickland, 466 U.S. at 700. The petition is, therefore, denied as to this claim of ineffective assistance of counsel.

## II. Habeas Counsel

The petitioner contends that the attorneys who represented him in both of his state habeas petitions were ineffective. Section 2254(i) states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Furthermore, the Supreme Court has held that the Sixth Amendment right to counsel does not extend to a collateral attack on a conviction. See Coleman v. Thompson, 501 U.S. 722, 755-57, (1991) (holding that there is no right to counsel in state collateral proceedings); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (recognizing that "[w]e have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . . and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). Thus, because there is no federal constitutional right to counsel in a state habeas proceeding, the ground for relief asserting claims of ineffective assistance of habeas counsel is not cognizable in this action. The petition is denied as to the second ground for relief.

## CONCLUSION

The petition for writ of habeas corpus [**Doc. #1**] is **DENIED**. The court concludes that the petitioner has not demonstrated the denial of a constitutional right. Accordingly, a certificate of appealability will not issue. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this ___3RD___ day of August, 2011, at Hartford, Connecticut.

/s/ Alfred V. Covello
Alfred V. Covello,
United States District Judge